### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| *Plaintiff*, | : Case No. 1:23-cr-58 |
| vs. | : Judge Jeffery P. Hopkins |
| KELLY RICHARDS, | : |
| *Defendant.* | : |

## OPINION & ORDER

This matter is before the Court on Defendant Kelly Richards' motion to suppress and request for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) (Doc. 28) (the "*Franks* Motion") and his motion for discovery (Doc. 29) (the "Discovery Motion"). At the close of the hearing held on November 15, 2023, the Court ordered the parties to submit simultaneous post-hearing briefs. The parties filed briefs on January 10, 2024 and January 11, 2024 (Docs. 34, 35). After considering all the arguments and being fully advised in the premises, Defendant's Motions are **DENIED**.

### I. BACKGROUND

On May 24, 2023, Defendant was charged in a five-count indictment containing two counts of sex trafficking of a minor in violation of 18 U.S.C. § 1591(a)(1) and (b)(2), two counts of sexual exploitation of a child in violation of 18 U.S.C. § 2251(a) and (e), and one count of possession by a prohibited person in violation of 18 U.S.C. § 922(g)(1). Doc. 18. The first four counts name Minor Victim 1 ("MV1") and Minor Victim 2 ("MV2"), who were fourteen and fifteen years old respectively at the time of the alleged offenses. *Id.*

In the *Franks* Motion, Defendant seeks to suppress evidence obtained under five search warrants issued by Magistrate Judge Stephanie K. Bowman, including ones for the search of 1828 Sunset Avenue, Apt. 26, Cincinnati, Ohio, issued May 12, 2023 (the "apartment warrant"); the cellular phone for account 513-668-6630, issued May 12, 2023 (the "cellphone warrant"); the TextMe account for 513-725-9361, issued May 5, 2023 (the "TextMe warrant"); the Facebook account 100022254577866 with account identifier scor.pio.7758235, issued May 5, 2023 (the "Facebook warrant"), and Defendant Kelly Richard's person, issued May 12, 2023 (the "person warrant"). Doc. 28.

Separately, in the Discovery Motion, Defendant asks this Court to order the Government to disclose certain documents pertaining to the minor victims' alleged criminal history without which he contends his *Franks* motion cannot be properly lodged or resolved. Doc. 29. The Court will address each motion in that order.

## II. LAW AND ANALYSIS

### A. Defendant is not entitled to a *Franks* hearing.

#### 1. *Franks v. Delaware*

"An affidavit supporting a search warrant is presumed valid." *United States v. Fountain*, 643 F. App'x 543, 545 (6th Cir. 2016) (citing *Franks*, 438 U.S. at 171). Accordingly, a defendant is entitled to an evidentiary hearing on the veracity of a warrant affidavit—a "*Franks* hearing"—if and only if (1) "there is a substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false *and* (2) a finding of probable cause would not be supported by the remaining content of the affidavit." *United States v. Atkin*, 107 F.3d 1213, 1216–17 (6th Cir. 1997) (quoting *United States v. Campbell*, 878 F.2d 170, 171 (6th Cir. 1997)); *see also United States v. Rose*, 714 F.3d 362, 370 (6th Cir. 2013)

2

(citing *Franks*, 438 U.S. at 171–72); *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019).

The defendant's burden in making this "substantial preliminary showing" is an exacting one. *Bateman*, 945 F.3d at 1008. The defendant's challenge

> must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. *Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.*

*Franks*, 438 U.S. at 171 (emphasis added). Merely proving a falsity or omission is not enough—the defendant must show the affiant *intended* statements made in support of a search warrant to be false or misleading. *See United States v. Merrell*, 330 F. App'x 556, 560 (6th Cir. 2009) (finding that district court properly denied request for *Franks* hearing when defendant "made no showing that the affiant intended to mislead the judge by th[e] omission"); *United States v. Schimley*, No. 1:08 CR 510, 2009 WL 5171826, at *6 (N.D. Ohio Dec. 21, 2009) ("*Franks* teaches that a mere showing of falsity is insufficient to demonstrate recklessness on the part of the affiant[.]"), *aff'd*, 467 F. App'x 482 (6th Cir. 2012).

The Sixth Circuit "has repeatedly held that there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement." *Fountain*, 643 F. App'x at 546 (quoting *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008)). Omissions are "less likely to present a question of impermissible official conduct than one which affirmatively includes false information." *Atkin*, 107 F.3d at 1217 (citing *United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990)). *Franks* hearings based

on omissions are thus rarely granted. *See United States v. Tate*, No. 21-3436, 2022 WL 1224552, at *4 (6th Cir. Apr. 26, 2022); *United States v. Graham*, 275 F.3d 490, 506 (6th Cir. 2001).

Ultimately, the decision of whether to hold a *Franks* hearing is "committed to the sound discretion of the district court." *Bateman*, 945 F.3d at 1008 (quoting *United States v. Young*, 847 F.3d 328, 348 (6th Cir. 2017)).

### 2. Entitlement to a *Franks* Hearing

#### 1. False Statements

Defendant argues strenuously that there are several false statements contained in the affidavits used to support the search warrants at issue in the case. For the reasons expressed below, Defendant has made no substantial preliminary showing that the affiant knowingly and intentionally, or recklessly, included false statements in the affidavits.

Initially, Defendant challenges MV1's statements in Paragraph 36 of the affidavits.[1] Among other things, the affidavits state that MV1 sat on the side of the bed while Defendant and MV2 had sex. Richards Ex. 1, ¶ 36. They further state that Defendant "eventually pushed MV2 off and engaged MV1 in vaginal sex." *Id.* Defendant challenges the consistency of MV1's statements relating to these encounters. When testifying before the grand jury, MV1 testified that she had sex with Defendant first, and then Defendant had sex with MV2. Richards Ex. 13F, 20:11–16. Defendant contends that these statements must be false because MV2 "indicated repeatedly that she did not recall Mr. Richards committing any sex acts with MV1." Doc. 28, PageID 75. Unfortunately for Defendant, this does not accurately portray

---

[1] All five of the search warrants at issue in this case were accompanied by corresponding affidavits. While there are slight variances between the affidavits, Defendant concedes that there are no material differences in the factual assertions contained in each. For sake of consistency, the Court will only refer to the affidavit accompanying the search warrant for 1828 Sunset Avenue but notes that the same legal analysis provided in this Opinion & Order applies to all five affidavits. *See* Richards Ex. 1.

4

MV2's entire statement. When viewed in its entirety MV2 stated: "I don't know if they [*i.e.*, Defendant and MV1] had sex." Richards Ex. 6A2; *see also* Richards Ex. 6A1.

Defendant has not shown that MV1's statements are in fact false, nor that the affiant omitted MV2's statements with the intent to mislead. It is important to realize here that the statements at issue were made by two minor victims who—at the time of the sexual encounters—were under the influence of "quite a bit" of cocaine and weed. Richards Ex. 1, ¶ 35, 36; Ex. 13F, 20:5–10. The affidavits state that MV1 and MV2 reported that they both ingested cocaine prior to entering Defendant's bedroom where the sexual encounters occurred. *Id.*, ¶ 36. Under the circumstances, confusion over whether Defendant had sex with MV1 or MV2 first and whether Defendant and MV1 had sex at all does not demonstrate evidence of a deliberate falsehood or of reckless disregard for the truth. If anything, the evidence complained of indicates that Defendant had sex with at least one of the minor victims which is entirely consistent with both of their testimonies.

In the *Franks* Motion, Defendant relies heavily upon *United States v. West*, 520 F.3d 604 (6th Cir. 2008), a case that involved a search warrant predicated on testimony from an unreliable informant who claimed that the defendant in that case had confessed to accidently murdering his ex-girlfriend even though none of the facts he asserted could be corroborated. The Court concludes that Defendant's reliance on *West* is misplaced. The facts present in this case are more analogous to *United States v. Rose*, 714 F.3d 362 (6th Cir. 2013). Similar to this case, the defendant in *Rose* was facing child pornography charges and had been accused of sexually molesting or raping three minor victims. *Rose*, 714 F.3d at 365. Like here, the defendant in *Rose* argued that he was entitled to a *Franks* hearing because the minor victims "contradicted themselves over the course of several interviews and [] there were

5

inconsistencies among the victims' versions of the events that took place at [the defendant's] residence." *Id.* at 370. Finding that the defendant had not established the statements in the affidavit were in fact false, the Sixth Circuit affirmed the district court's denial of the motion to suppress and refusal to hold a *Franks* hearing. *Id.* In so doing, the Sixth Circuit determined that the defendant had not made a showing that the affiants' statements had in fact been false so as to warrant a *Franks* hearing. Instead, the court rationalized that the evidence seized from the defendant's residence and cell phones established that the substance of the minor victims' allegations in *Rose* were in fact true.

The same can be said here. None of the alleged conflicting information contained in the affidavits upon which Defendant relies establish that the victims' statements are in fact false, or that the affiant included them with an intent to mislead. Even though some of the information provided by the minor victims give the appearance of being inconsistent or contradictory, key details of their statements were corroborated by independent investigation of law enforcement. The circumstances presented in this case are starkly different from those which occurred in *West,* where law enforcement could not corroborate any of the information from the informant but instead relied nearly exclusively upon information that was based on unsubstantiated conclusions and unreliable hearsay. *West*, 520 F.3d at 611.

Defendant contends that the inconsistencies he identified in the affidavits raise questions of whether MV1 and MV2 were present at his apartment at all. Other details adduced in the affidavits which were verified by investigators severely undercut Defendant's argument. MV1 reported that Defendant picked them up from Hope Haven, a group home for girls, on February 28, 2023, in a "tan or silver color sport utility vehicle," and drove them to an apartment complex located at 1828 Sunset Avenue. Richards Ex. 1, ¶ 33. Investigators

6

later conducting surveillance in the area of 1828 Sunset Avenue observed an Infiniti SUV that fit MV1's description of the vehicle shortly after the events that gave rise to issuance of the search warrants. *Id.*, ¶ 34. Investigators were also able to tie the silver color SUV to Defendant as the owner. *Id.* When later shown a photo of the Infiniti SUV, MV1 confirmed that it was the same vehicle used to pick her and MV2 up from Hope Haven. MV1 also identified a photograph of 1828 Sunset Avenue as Defendant's residence. Independent of MV1's testimony, MV2 told investigators that Defendant's apartment was located on Sunset Avenue in Westwood, and "specifically described the location of his apartment at the bottom of the stairs next to a laundry room." *Id.*, ¶ 43. MV2 also showed investigators a map of the location of the apartment on her phone, which was consistent with 1828 Sunset Avenue.

Additionally, Defendant and the minor victims reportedly ordered pizza from LaRosa's the day after Defendant picked up MV1 and MV2 from Hope Haven. Investigators recovered a LaRosa's receipt dated March 1, 2023 for a customer listed as "Scorpio," which was the name by which Defendant was known to the minor victims. *Id.*, ¶ 33, 37. Records indicated that the order originated from a phone number associated with Defendant.[2] *Id.*

Defendant's contentions as to Paragraphs 38 and 42 are also unpersuasive. Defendant contends that MV1's statements relating to sexual acts with "Lorenzo" must be false because MV2 "did not recall MV1 having a date with Lorenzo." Doc. 28, PageID 75. But again, this does not establish that MV1's statements are false. When asked whether she remembered

---

[2] The Government raises whether Defendant has standing to challenge the cell phone warrant and the TextMe warrant because of the arguments set forth in Defendant's *Franks* Motion. The Court, however, concludes that there is a sufficient factual basis to find that Defendant had a legitimate expectation of privacy in the targeted cell phone and therefore has Fourth Amendment standing to bring his motion relating to the cell phone and TextMe warrants. Here, the Government specifically alleges that the iPhone 11 Pro Max, telephone number of 513-668-6630, was used by Defendant. The TextMe account was linked to that phone. And, the phone was also recovered from Defendant's person. *See United States v. Herron*, 2 F.Supp.3d 391, 400–401 (E.D.N.Y. 2014).

7

anyone by the name of "Lorenzo," MV2 stated: "I don't know them." Richards Ex. 6B. None of MV1's statements relating to sexual encounters with Lorenzo establish that MV2 was involved in those encounters. Therefore, it was not misleading to exclude MV2's inability to recall Lorenzo in the affidavits since it was not material to MV1's statements.

### 2. Omissions/Inconsistencies

Before turning to the alleged omissions, the Court first will delineate the key details gleaned from the minor victims that help establish a fair probability that evidence of the crimes charged against the Defendant would be located at the places to be searched. *See* Richards Ex. 1; *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) ("To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search.") (citations and internal quotations omitted). As earlier discussed, the minor victims were able to supply investigators with the location of Defendant's apartment and details of the illegal activities that occurred there. *Id.*, ¶ 33, 43, 45. They were also able to describe where nude photographs of themselves in Defendant's apartment were taken, which of Defendant's cell phones was used, the location and provider of the online advertisements portraying those photos, and the account password Defendant used to access the ads. *Id.*, ¶ 39, 40, 43, 44, 45. In addition, the minor victims were able to identify the types of cell phones and telephone numbers that Defendant used, and the purposes for which he used them. *Id.*, ¶ 40, 43, 44. Further, the minor victims were able to detail the sordid nature of the sexual encounters they had with other older men, where those encounters occurred, and how Defendant arranged the encounters using the software applications on his cell phones. *Id.*, ¶ 41, 42, 49. Finally, as

8

noted, both of the minor victims were able to accurately describe the type of vehicle that Defendant drove when he picked them up from Hope Haven. *Id.*, ¶ 33.

Investigators independently corroborated much of the information conveyed to them by the minor victims related to Defendant's cell phone information and the TextMe account—which undermine Defendant's assertions that the affiant omitted relevant forensic evidence in an attempt to mislead. To start, the LaRosa's receipt referenced earlier was linked to a telephone number of 513-668-6630 found in Defendant's possession. Further, AT&T records later revealed that the phone associated with that number was an iPhone 11 Pro Max, which was consistent with MV1's statements. *Id.*, ¶ 37, 40. Similarly, the phone number on the advertisement was 513-725-9361. *Id.*, ¶ 44. Investigators identified this telephone number as a TextMe number. And although the basic user information for this number did not identify Defendant as the subscriber, "the subscriber information identified that [the] 513-725-9361 was utilized by an iPhone 11 Pro Max, the same phone associated with [Defendant's] AT&T number found on the LaRosa's receipt." *Id.*, ¶ 46. Further, investigators confirmed through an administrative subpoena that the last login to the TextMe account associated with the 513-725-9361 number was from an IP address assigned to the Defendant's account at 1828 Sunset Avenue, Apartment 26C, Cincinnati, Ohio, telephone number 513-668-6630. *Id.*, ¶ 47. Viewed together, the investigation and statements contained in the minor victims' testimony in support of the search warrants establish a fair probability that evidence related to the offenses for which Defendant has been charged would be located at the places searched.

Defendant contends that the affiant omitted conflicting information in Paragraph 40 of the affidavits relating to *who* took the photographs of the minor victims that were posted for online advertisements for sex. When testifying before the grand jury, MV1 testified that

9

she and MV2 both took pictures with Defendant's phone. Richards Ex. 13G, 54:2–56:16. She also testified that Defendant took some pictures. *Id.* at 53:15–54:1, 55:16–56:6, 57:2–8. MV2 reported to investigators that MV1 took pictures of MV2 at the direction of Defendant. Richards Ex. 6D. Given the limited recording available to the Court, it is not clear whether MV2 reported that MV1 took all of the photos or that she simply took some of the photos. Nevertheless, the primary inconsistency here arises where MV1 told investigators that Defendant did not allow the minor victims on his phone—meaning that they could not have taken any of the pictures using his cell phone. Richards Ex. 6C.

Despite an apparent inconsistency in one of her many statements verified in the investigation that the minor victim gave, the Court is not persuaded that the affiant omitted information from the affidavits with an intent to mislead the Magistrate Judge. Consistent with the affiant's statement, *see* Richards Ex. 1, ¶ 40, MV1 reported that one of Defendant's cell phones was used to take pictures of her and MV2 and to post them for online advertisements. MV2 identified that the number on the ad was the number that Defendant used to set up dates for the minor victims. MV2 also was able to locate and identify for investigators the ad that was posted on List Crawler. Richards Ex. 1, ¶ 44, 45. Damning to Defendant's argument, the ad included three pictures and one video of MV2, and three pictures of MV1. *Id.* MV1 also identified herself and MV2 when shown a printout of the ad. *Id.*, ¶ 45. Finally, MV1 described where the pictures had been taken in Defendant's apartment and the blanket in the pictures was said to be identical to one located on Defendant's bed. *Id.*

Even assuming *arguendo* that Defendant satisfies part one of the two-part inquiry under *Franks*—that the affiant omitted information from the affidavits deliberately or with reckless disregard—Defendant has not proven that this omission is necessary to the probable cause

10

finding in the affidavits. The question of *who* took the pictures of the minor victims is, at most, immaterial relative to the offense Defendant has been charged with. For a charge brought pursuant to 18 U.S.C. § 2251, the Government need only prove that Defendant "persuade[d], induce[d], or coerce[d]" the minor victims to engage in "sexually explicit conduct for the purpose of producing [a] visual depiction of such conduct." *United States v. Daniels*, 653 F.3d 399, 408 (6th Cir. 2011); 18 U.S.C. § 2251(a). So, even if the conflicting statements were included in the affidavits, probable cause still exists.

Of the various alleged omissions, Defendant's next allegation regarding the age of the minor victims is perhaps the least compelling. Defendant contends the affiant omitted the fact that MV1 and MV2 lied to Defendant about their ages—representing that they were eighteen and nineteen years old, respectively. Although this may have been omitted from the affidavits, there is no indication that the affiant did so intentionally or in an effort to mislead. Even if the information had been included, it would not impact the probable cause finding because the affidavits allege violations of 18 U.S.C. § 2251 and the Government need not prove that Defendant knew the victims' ages for charges made pursuant to 18 U.S.C. § 2251(a). *See United States v. Humphrey*, 608 F.3d 955, 962 (6th Cir. 2010) ("[K]nowledge of the victim's age is neither an element of the offense nor textually available as an affirmative defense").

To the extent that Defendant contends there were omissions regarding the reliability of the minor victims, this too is unpersuasive. Although each minor victim is proceeding by pseudonym, "we do not treat an unnamed juvenile, whose identity is known to the police, the same as an anonymous tipster simply because her name is excluded from the affidavit." *Tolbert v. United States*, 112 F. App'x 440, 443 (6th Cir. 2004). "The reliability that comes from knowing an informant's identity is not based on inclusion of her name in the affidavit, but

11

rather on the fact that if she is lying she may be prosecuted under state laws for making a false statement to police." *Id.* (citing *United States v. Miller*, 314 F.3d 265, 270 (6th Cir. 2002)). And, as here, where the minor victims are just that, victims, their statements "are entitled to a presumption of reliability and veracity without independent corroboration." *United States v. Ingram*, No. 92-5367, 1993 WL 5914, at *2 (6th Cir. Jan. 13, 1993).

Defendant is convinced that records relating to criminal history or misconduct exists, at least as to MV2, and strenuously argues that any such information should have been disclosed in the affidavits. However, the Sixth Circuit has "established no clear list of what information the affiant must include…the general idea is that the 'issuing judicial officer [must be] reasonably assured that the informant was credible and the information reliable.'" *United States v. Jones*, 533 F. App'x 562, 568 (6th Cir. 2013) (quoting *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000)). And here, there is sufficient information in the affidavits demonstrating that the minor victims were credible and the information they provided reliable. *See generally United States v. Swihart*, 554 F.2d 264 (6th Cir. 1977) (holding that when the informant providing the basis for an affidavit is an identified, non-professional who is the victim of the crime, the credibility determination is less stringent due to the circumstances).

Had more of the minor victims' criminal history or misconduct been disclosed, Defendant has not established that that information would have been enough to undermine probable cause. *Jones*, 533 F. App'x at 569 (finding that probable cause still existed where affiant failed to disclose the confidential informant's criminal record, his status as a meth addict, and that he had possibly ingested some of the meth that he purchased on the government's dime). Here, the affidavits detailed various embarrassing and perhaps self-incriminating facts by the minor victims which the Magistrate Judge clearly must have

12

considered when assessing reliability, including that: (1) the minor victims had been screened as possible sex trafficking victims, (2) the minor victims absconded without permission from Hope Haven with Defendant Richards, (3) the minor victims consumed illicit substances, including cocaine, while at Defendant's apartment, (4) the minor victims admitted to posing for sexually explicit pictures while at Defendant's apartment, and (5) the minor victims engaged in sexual activity with Defendant and other older men. Richards Ex. 1.

Also without merit are Defendant's arguments related to the Facebook messaging conversation memorialized in Paragraph 50 of the affidavits. Defendant contends that the affiant omitted key passages from that conversation in an effort to distort the obvious meaning of those messages. When viewing the messages in the affidavits, the conversation reads as though Defendant was trafficking MV2 on that particular date. Richards Ex. 1, ¶ 50. However, when reading the conversation in its entirety, the context of the conversation is not as clear. Richards Ex. 10, 11. But even assuming that the affiant did omit portions of the conversation in an attempt to mislead, Defendant has not demonstrated that the omission had any material impact on the probable cause finding. The fact remains that Defendant and MV2 communicated on Facebook. MV2 told investigators that she contacted Defendant through Facebook to arrange him picking her and MV1 up from Hope Haven. Richards Ex. 1, ¶ 43. And Defendant has not asserted that the conversation at issue did not occur. Considering these conversations, and all of the other information set forth in the affidavits, probable cause exists even if the Facebook exchange had been included in its entirety.

The last items to address are Defendant's arguments related to the omission of bank record information and IP address information. The Government indicates that the bank records to which Defendant refers were not received by the FBI until May 19th, which was

13

after the affidavits were sworn in this case. Doc. 35, PageID 241. Even so, the affidavits reflect that MV2 reported Defendant "had another person pay for hotel rooms." Richards Ex. 1, ¶ 49. As for the IP address information, Defendant has not shown that this is in fact a material omission because the information is inconclusive. *See* Richards Ex. 14. There is an even higher bar for obtaining a *Franks* hearing based on a material omission and Defendant has not met that heavy burden here. *See Fountain*, 643 F. App'x at 546.

Because there has been insufficient proof offered that would suggest that the affidavits contained deliberate or reckless falsities or omitted facts, Defendant's motion to suppress and request for a *Franks* hearing are denied.

### B. Defendant is not entitled to the discovery he seeks.

As a final matter, Defendant has asked the Court to order disclosure of the minor victims' criminal records, incarceration records, records relating to other misconduct, Facebook Messenger records, and any other statements that the minor victims have made to investigators or at the Mayerson Clinic.

It is settled law in this circuit that the Government is "required to disclose exculpatory evidence, including evidence that may impeach the credibility of a witness" under *Brady* and *Giglio*. *Jiminez v. United States*, No. 20-5361, 2020 U.S. App. LEXIS 24741, at *3 (6th Cir. Aug. 5, 2020) (quoting *United States v. Jones*, 399 F.3d 640, 647 (6th Cir. 2005)). However, the Sixth Circuit has also observed that the government is only required to "disclose all exculpatory and impeachment evidence that is in [its] possession '*in time for use at trial*.'" *United States v. Smith*, 749 F.3d 465, 492 (6th Cir. 2014) (quoting *United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988)) (emphasis added). Importantly, "[w]hen *Brady* material sought by a defendant is covered by the Jencks Act[,] the terms of that Act govern the timing

14

of the government's disclosure." *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002) (quoting *United States v. Bencs*, 28 F.3d 555, 561 (6th Cir. 1994); *see also Presser*, 844 F.2d at 1283 ("The clear and consistent rule of this circuit is that the intent of Congress expressed in the Act must be adhered to and, thus, the government may not be compelled to disclose Jencks Act material before trial.").

At this juncture in the proceedings, Defendant has no legal basis for obtaining the sort of information about the minor victims he now seeks, namely their criminal history. Additionally, as the Government advances in its response, to the extent that Defendant seeks information related to the minor victims' prior sexual behavior or predisposition, Defendant ultimately may be prohibited from using all or most of that information at trial. Doc. 31, PageID 116 (citing Fed. R. Evid. 412). In any case, the information sought about the minor victims' criminal and sexual history was not relevant or necessary for purposes of Defendant's use in presenting the *Franks* motion or arguing for the Court to grant his request to suppress the evidence obtained from the search warrants. Accordingly, Defendant's motion is denied without prejudice, subject to his being able to renew this motion closer to trial, should Defendant decide to reargue the matter under *Brady* or the Jencks Act.

### III. CONCLUSION

For the reasons set forth above, Defendant's *Franks* Motion (Doc. 28) and Defendant's Discovery Motion (Doc. 29) are hereby **DENIED**.

**IT IS SO ORDERED.**

April 1, 2024

                                               Jeffery P. Hopkins
                                               United States District Judge